On February 4, 1993, Bobby Edward Hillery (the "worker") was injured in an accident involving two tractor trailers, one of which he was driving for his employer, MacMillan Bloedel, Inc. (the "company"). The worker had no visible signs of injury as a result of the accident. He did not return to work, however, because of the recommendation of a neurologist that he not drive until he had undergone a psychiatric evaluation. The company closed its logging operations on March 12, 1993, and it laid off all of its truck drivers, including the worker. The worker sued for workers' compensation benefits, which the trial court awarded. He appeals, arguing that the trial court incorrectly determined the date of maximum medical improvement ("MMI"). After reviewing the record and the exhibits, we agree.
The trial court's judgment includes a finding that the worker suffered a mild closed head injury in the February 4, 1993, accident, and it awards the worker temporary total disability benefits from February 4 to March 12, 1993, the date the company laid off the worker. It also awards permanent partial disability benefits. The worker argues that nothing in the record establishes that he has reached MMI, and, therefore, that he is still entitled to receive temporary total disability benefits.
"Temporary total disability refers to 'the healing period during which an employee is recovering and unable to work.' "Ex parte Moncrief, 627 So.2d 385, 387 (Ala. 1993) (quotingHaywood v. Russell Corp., 611 So.2d 365, 367 (Ala.Civ.App. 1992)). The " ' "time of temporary total disability" is the recovery period that lasts until maximum medical recovery is reached.' " Ex parte Moncrief, 627 So.2d at 387-88 (quotingHaywood, 611 So.2d at 367). When MMI is reached depends on the circumstances of the particular case. Pemco Aeroplex, Inc. v. *Page 825 Johnson, 634 So.2d 1018, 1020 (Ala.Civ.App. 1994). Before a trial court can award permanent total or permanent partial disability benefits, the worker must have reached MMI. AlabamaBy-Products Corp. v. Lolley, 506 So.2d 343, 344 (Ala.Civ.App. 1987).
Many of the worker's doctors testified by way of deposition. The first doctor to treat the worker was Dr. Sumpter Blackmon. After the accident, the worker was taken to his office for examination. Dr. Blackmon testified that he could find no visible injury to the worker's head; however, he stated that he ordered a CT scan to rule out any closed head injuries. He stated that he noted in his records that the worker exhibited amnesia concerning the accident and that he was suffering from a mental-status change, which he defined as a change in the worker's thought processes and cognitive functions. The CT scan was performed on February 5, and it showed no signs of neurological damage. Dr. Blackmon testified that he released the worker to work on February 8, but that on February 9, 1993, he also referred the worker to a neurologist, Dr. James L. Perrien, for further examination.
Dr. Perrien testified that he first saw the worker on February 12, 1993, and diagnosed the worker with a closed head injury and behavioral changes, based on the worker's history. He stated that he performed a neurological examination on the worker, the results of which were normal. In light of the statements from the worker and his wife that the worker suffered some altered mental activity both before and after the accident, Dr. Perrien testified that he concluded that further testing would be appropriate. According to him, on February 24, 1993, he ordered that the worker not return to work and specifically restricted him from driving pending a psychiatric examination. Dr. Perrien conducted an MRI and some lab work; the MRI was normal and showed no neurological damage. However, Dr. Perrien explained in his deposition that a mild closed head injury sometimes will not show up on a CT scan or MRI, but he said that such an injury may produce an altered mental state and other symptoms. Dr. Perrien testified that he last saw the worker on December 10, 1993, at which time the worker complained of difficulty in using his right arm and appeared depressed. Dr. Perrien stated that he again performed an MRI to rule out a possible stroke as a cause of the worker's new complaints; according to Dr. Perrien, the MRI was again normal.
Dr. Thomas J. Boll, a psychologist, testified that he saw the worker on May 14, 1993. He stated that a mild closed head injury like the one probably sustained by the worker would cause short-term amnesia of the traumatic event, other short-term memory problems, and loss of attention or concentration. He also testified that the symptoms of a mild closed head injury were of relatively short duration, approximately 0 to 3 months, and usually improved spontaneously. He stated that the symptoms of such an injury never worsen over time. According to Dr. Boll, the worker stated that his symptoms were nervousness when speaking, inability to sleep, lack of energy, decreased interest in leisure activities, headaches and dizziness, loss of weight, and shakiness in his right hand and shoulder. Dr. Boll stated that, based upon his observation and testing of the worker, he concluded that the worker had not suffered a closed head injury. He testified that, to produce the symptoms the worker told him he was suffering, the worker's head injury would have had to be "very, very severe." Dr. Boll testified that he had concluded that the worker had not given maximum performance effort and was malingering. According to Dr. Boll, he saw the worker again on September 14, 1993, for a follow-up evaluation. Dr. Boll stated that, based upon the worker's complaints and his test results, the worker's condition had worsened at that time; this worsening, Dr. Boll opined, was inconsistent with the healing of a head injury.
The medical services supervisor at the company, Angela Wise, testified at trial that the company was informed by Dr. Perrien that the worker's driving activities were restricted until he received a psychiatric evaluation. She also testified that, by the time the psychiatric evaluation was conducted, the company had terminated its logging operations *Page 826 
and had laid off its truck drivers, including the worker.
The company argues that, because the determination of MMI rests on the facts and circumstances of the particular case,see Johnson, 634 So.2d at 1020, the trial court's assignment of a March 12, 1993, MMI date to the worker is supported by the evidence. Counsel for the company stated, while discussing the issues of the case with the trial court: "There's been no proof of an MMI date." We agree. Dr. Perrien restricted the worker's driving activities until he was seen and treated by a psychologist or psychiatrist. The worker was not seen by a psychologist until Dr. Boll examined him in May 1993, two months after the trial court's arbitrary MMI date. Not one doctor testified that the worker had, or had not, reached MMI.
While we agree that the trial court's assignment of the March 12, 1993, MMI date is error, we cannot determine whether MMI was reached, or, if it has been reached, when it was reached. Therefore, we reverse the trial court's judgment and remand this cause for the trial court to determine whether the worker has reached MMI and, if he has reached MMI, to determine the date of MMI.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES,
MONROE, and THOMPSON, JJ., concur.