EDWARD N. SCRUGGS, Retired Circuit Judge.
This is a workmen’s compensation case.
Much of the evidence conflicted but, generally, we will summarize only that testimony which tends to support the findings of the trial court because of the rule of review which applies to this case.
While employed by Marion Homes, Mr. Dulaney received an on the job injury in October 1980. In accordance with his employer’s authorization, he went to the company doctor who operated upon him to correct a hernia. During the course of treatment, the employee developed a dislike for that company physician. A few weeks after the accident, he resumed the same employment and experienced few, if any, problems in connection with the hernia.
*956 On February 17,1981, he fell while working and experienced pain and numbness in his legs. A co-worker testified that, immediately after the accident, Mr. Dulaney informed him that he had fallen and hurt his back. Mr. Dulaney swore that he told his foreman and the company’s industrial nurse of his fall on February 17. Apparently everyone, including Mr. Dulaney, assumed that he had reinjured his hernia. When it was suggested by the nurse that he see the company doctor, he refused to do so because of his dissatisfaction with that physician. She instructed him to go to his family doctor, but he decided against seeking medical attention on that day. However, the next morning his pain was so severe that he had to remain in bed and he swore that he was again authorized by the nurse to see his family doctor, who was Dr. Halcomb. The employee saw Dr. Halcomb. He was X-rayed and hospitalized for fifteen days for a back injury. The treatment consisted primarily of traction. The employer is self-insured as to workmen’s compensation. The employer paid for that hospitalization and purchased for Mr. Dulaney, at the suggestion of Dr. Halcomb, the necessary apparatus which was used by him for six hours each day at home after his discharge from the hospital. After home treatment for six days, Mr. Dulaney was admitted to a Tuscaloosa hospital and he was referred by Dr. Halcomb to Dr. Fernandez, a neurosurgeon. He was again placed in traction and, upon his release from the Tuscaloosa hospital, was directed to resume the home use of traction.
At the first ore terns trial in February 1982, the employee testified that, at that time, he could not sleep, that he experienced numbness in his left leg and lower back at all times, that his wife must massage his legs three or four times every night, that he suffers constant lower back pain which is often severe, that he cannot lift anything which weighs over twenty-five to forty pounds without experiencing severe pain in his back, that he cannot participate in softball, basketball or bird hunting because of his back and that, except for light work, he could not physically do any of the many jobs which he had previously held. His job history consisted entirely of physical labor. He attended school to the tenth or eleventh grade and later passed his GED test, but he has no special skills or technical training although he has sixty hours of junior college credits which he earned through the G.I. bill.
Dr. Halcomb testified that Mr. Dulaney’s back pain was consistent with a fall at work. The diagnosis was early herniation of the lumbar disc, which probably renders it prone to further injury. All of Mr. Dula-ney’s physical problems relate back to the fall he suffered at work. Mr. Dulaney can do no heavy lifting. The doctor gave no estimate as to the percent of disability suffered by his patient.
On February 18,1982, the company nurse knew that Mr. Dulaney was at a hospital concerning a back injury but she declined to authorize his hospitalization and turned the matter over to the company’s, claims manager of their self-insurance program. Mr. Dulaney testified that his hospitalization was authorized by the claims manager. Later, the claims manager wrote to a physician that Mr. Dulaney “did not like our company doctor and we allowed him to obtain treatment from his family doctor.”
At the time of the entry of a judgment in his case, Mr. Dulaney had obtained new employment which was much less physically demanding than his job with Marion Homes. His new wages equaled or exceeded his earnings at Marion Homes.
The learned trial court determined that, as a result of the accident, Mr. Dula-ney sustained a fifty percent disability to the body as a whole and that his permanent partial loss of ability to earn amounted to fifty percent. The first appellate issue is that the evidence did not support that finding by the circuit court. The rule of review in a workmen’s compensation case is that the factfinding made by the trial court must be upheld if it is supported by any legal evidence, for we do not consider the weight of the evidence but only whether the required evidence existed. Goodyear *957 Tire and Rubber Co. v. Greene, 426 So.2d 851 (Ala.Civ.App.1983). The necessary evidence was present in this case to uphold the trial court’s findings. Although Dr. Fernandez deposed that Mr. Dulaney’s permanent partial disability was only five percent, a consideration of that neurosurgeon’s opinion along with all of this other evidence upholds the trial court’s judgment. Orkin Exterminating Co., Inc. v. Williams, 389 So.2d 935 (Ala.Civ.App.1980). His entire employment history prior to his last injury involved hard manual labor in each job and the testimony as to his physical condition indicates a diminution of his capacity to earn and that evidence was adequate to overcome any presumption concerning the post-injury wages which he actually received at the time of the final judgment. Federal Mogul Corp. v. Moses, 341 So.2d 162 (Ala.Civ.App.1976).
The employer’s other issue is directed towards the employee’s use of physicians, Drs. Halcomb and Fernandez, who were not selected by the employer. At the hearing held upon Marion Homes’ motion as to that problem, the evidence conflicted. The trial court found against the employer on that matter and the evidence as previously detailed which was favorable to that ruling was adequately supportive of the holdings of the trial court. This question is both factually and legally foreclosed by Sunnyland Foods, Inc. v. Catrett, 395 So.2d 1005 (Ala.Civ.App.1980), cert. denied, 395 So.2d 1010 (Ala.1981), where it was held as follows:
“The statute [§ 25-5-77, Ala.Code (1975)] clearly gives the employer at least the first three selections of physicians or of surgeons.
“The evidence shows that Catrett was referred by the employer to Dr. Haley, an orthopedic surgeon, who performed disc surgery on Catrett. Prior to being released by Dr. Haley, Catrett testified that during a conversation with Arthur Jessee, an adjuster for the insurer, Jessee told him that he could go to any doctor he wished to consult. Thereafter, Catrett selected Dr. Serrato as his doctor.
“By authorizing Catrett to seek treatment from a doctor of his choice, Sunny-land effectively transferred its authority to choose the doctor to Catrett; and Ca-trett stated that he was completely satisfied with Dr. Serrato. Thus, Sunnyland cannot contend that Catrett unreasonably refused treatment from doctors later suggested by it when Catrett was being treated by a doctor with whom he was fully satisfied after being authorized by Sunnyland to choose his own physician.
“Since Catrett had authority to use Dr. Serrato, did receive treatment from him, and was satisfied with that treatment, it cannot be said that Catrett refused medical treatment. Hence, § 25-5-77(b) would have no application.
“Since Catrett was never dissatisfied with Dr. Serrato and never informed Sunnyland of such, Sunnyland never had a right to designate another doctor. Therefore, we hold that Catrett may not be forced to leave the care of a doctor with whom he is satisfied even though the employer, i.e. Sunnyland, might have become dissatisfied with that particular doctor.” (Footnote omitted.)
395 So.2d at 1008-9.
When Mr. Dulaney was authorized by his employer to obtain treatment from his family physician instead of the company doctor, that authorization, unless otherwise specifically restricted, would necessarily extend to all injuries received by the employee resulting from the February 17 accident, including injuries to his back, and the authority which was granted did not limit medical treatment only and exclusively as to a hernia injury, which was a misdiagnosis or erroneous assumption which was initially made by both the employee and the employer.
We affirm.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Ala *958 bama of 1975 and this opinion is hereby adopted as that of the court.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
BRADLEY, J., not sitting.