MOORE, Judge.
The City of Prattville (“the City”) seeks a writ of mandamus ordering the Autauga Circuit Court (“the trial court”) to vacate its order of February 4, 2010. In that order, the trial court ordered the City to authorize pendente lite medical treatment for James Pilson, its employee, pursuant to the Alabama Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq. (“the Act”). We deny the City’s petition.

Background

On January 25, 2008, Pilson, an employee of the Prattville Police Department, was involved in a motor-vehicle accident during the course of his employment. The City received notice of the accident and authorized Dr. James Carpenter to treat Pilson’s injuries from the accident. After quickly becoming dissatisfied with Dr. Carpenter, Pilson began simultaneously seeing Dr. Danny Ingram, his family doctor, at his own cost.[1] At some point, Dr. Ingram referred Pilson to Dr. Patrick Ryan, a neurosurgeon. On February 28, 2008, Pil-son requested that Dr. Carpenter also refer Pilson to Dr. Ryan, but Dr. Carpenter did not do so. Thereafter, Pilson communicated his dissatisfaction with Dr. Carpenter, and he selected a new authorized treating physician, Dr. Daniel Banach, a family-medicine practitioner, from a panel of four physicians provided by the City. See Ala.Code 1975, § 25-5-77.
On March 5, 2008, Pilson started treatment with Dr. Ryan outside the City’s *687 workers’ compensation system. On April 2, 2008, at his initial visit with Dr. Banach, Pilson informed Dr. Banach of all of his previous treatment, which included an MRI exam that showed two herniated disks in his neck at C5-6 and C6-7, epidural injections, and physical therapy that had been prescribed by Dr. Ryan. Dr. Banach reviewed the MRI report and agreed with the diagnosis of two herniated cervical disks. Dr. Banach testified that, ordinarily, he referred a patient with such findings to a neurosurgeon for treatment options. He also testified that, based on his ordinary practice, he had indicated in his medical records that he wanted to refer Pilson to Dr. Ryan and further that he wanted to try to get all Dr. Ryan’s previous treatment of Pilson “under workers’ compensation.” Dr. Banach forwarded to the City a completed workers’ compensation form regarding his evaluation of Pil-son; on that form, Dr. Banach indicated: “refer to Dr. Ryan.” Dr. Banach testified that he made the referral because Dr. Ryan was already treating Pilson and, Dr. Banach stated, “it’s my opinion that [Dr. Ryan] is the best neurosurgeon in this area, so he is the one I would recommend had [Pilson] not seen him already.” Dr. Banach testified that he concurred with Dr. Ingram’s referral of Pilson to Dr. Ryan. However, at that time, the City did not refer Pilson to Dr. Ryan through its workers’ compensation system.
Pilson continued to follow up with Dr. Ryan, showing initial improvement, but he eventually informed Dr. Ryan on March 18, 2009, that conservative measures had not cured his neck pain and that he wanted to proceed with surgery. Dr. Ryan agreed that Pilson needed a cervical diskectomy and fusion, and, on March 31, 2009, Dr. Ryan scheduled the surgery for April 9, 2009. The City did not, however, authorize Dr. Ryan to perform the surgery. On April 2, 2009, Pilson returned to see Dr. Banach. On examination, Dr. Banach found that Pilson continued to have symptoms indicative of cervical disk herniations. Dr. Banach noted that Dr. Ryan had recommended surgery and that Pilson needed a referral from him in order to have that surgery covered by workers’ compensation. Dr. Banach again indicated that he wanted to refer Pilson to Dr. Ryan, this time specifically for the surgery, which Dr. Banach felt Pilson needed. However, a person from the City’s workers’ compensation administrator informed Dr. Banach’s nurse in a telephone call on April 3, 2009, that the City would not authorize Dr. Ryan as a treating physician for Pilson and that, instead, the City wanted Pilson to see an orthopedic surgeon, Dr. Michael Davis.
On May 6, 2009, Pilson filed a complaint seeking benefits under the Act. On that same date, Pilson filed a motion to compel medical treatment. In that motion, Pilson alleged that Dr. Banach had “recommended” treatment with Dr. Ryan and that the City had “failed to authorize and/or approve [that] course of treatment.” [2] The City answered Pilson’s complaint. The City admitted in its answer that Pilson had received injuries in the motor-vehicle accident and that it had received proper notice of the accident. However, the City denied that, as a proximate result of the accident, Pilson had “suffered a head injury, concussion, neck injuries including a bulging disc, numbness and tingling in fingers, laceration to head requiring 18 staples, and loss of full cognitive function,” as Pilson alleged in his complaint. The City also denied that Pilson had obtained medical treatment for those injuries and denied that he needed additional treatment for those injuries. The *688 City stated in its answer that it disputed “the scope and extent of the medical treatment sought by [Pilson] and contends [Pil-son] is seeking recovery for unauthorized treatment which is not related to an on-the-job accident” and that, “[d]ue to [Pil-son’s] refusal to obtain further treatment from an authorized physician, [the City] is without knowledge or information sufficient to form a belief as to the truth of whether [Pilson] is in need of additional treatment.” The City further asserted that Pilson was seeking medical treatment that was not reasonably necessary.
On December 16, 2009, after the parties had conducted discovery, Pilson renewed his motion to compel medical treatment, again seeking to compel the City to authorize his treatment with Dr. Ryan. In support of his renewed motion, Pilson submitted the deposition of Dr. Banach. The City moved for a final hearing; it also opposed Pilson’s renewed motion for medical treatment, asserting that Dr. Banach had never referred Pilson to Dr. Ryan but, rather, that it had been Dr. Ingram who had made the referral. After a hearing, the trial court granted Pilson’s motion. In its order, the trial court found that Dr. Banach had referred Pilson to Dr. Ryan, and it ordered the City to authorize Dr. Ryan’s treatment of Pilson within a reasonable time not to exceed 21 days.
On March 17, 2010, the City petitioned this court for a writ of mandamus directing the trial court to vacate its order. We granted the City’s motion to stay enforcement of the trial court’s order pending the resolution of the City’s petition. The parties completed their briefing to this court on June 16, 2010, at which time the ease was assigned to this judge. We now deny the petition and lift the stay.

Standard of Review

“ ‘ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).... ’
“Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003).”
Ex parte Progressive Specialty Ins. Co., 31 So.3d 661, 663 (Ala.2009).

Analysis

In its petition, the City asserts that the trial court erred in ordering it to authorize Dr. Ryan’s treatment of Pilson because, it says, Dr. Banach, Pilson’s authorized treating physician, made no referral to Dr. Ryan. The City alternatively asserts that, even if the trial court correctly found that Dr. Banach had referred Pilson to Dr. Ryan, the City had expressly limited Dr. Banach’s authority to make such a referral and, as a result, Dr. Banach lacked the authority to refer Pilson to Dr. Ryan. Additionally, the City asserts that an authorized treating physician cannot refer an injured employee to a physician whom the employee is already seeing. Finally, the City asserts that the trial court erred in granting Pilson’s motion to compel medical treatment before deciding the issue of compensability under the Act.
We address the last issue first. Generally speaking, an employee covered by the Act is entitled to the medical benefits set out in Ala.Code 1975, § 25-5-77, if: (1) the employee has sustained an injury due to an accident arising out of and in the course of the employment; (2) the employee notifies the employer of the accident and injury; (3) medical benefits are reasonably necessary to treat the work-related injury; and (4) medical benefits are *689 authorized by the employer. See generally Ex parte Publix Super Markets, Inc., 963 So.2d 654, 658 (Ala.Civ.App.2007). In Publix, this court held that, when an employer disputes the occurrence of a work-related accident and/or disputes that the work-related accident has caused or contributed to an injury for which an employee seeks medical benefits, a trial court may not order authorization and payment of those medical benefits without first resolving the dispute as to compensability via due process, which ordinarily entails an evidentiary hearing. See also Ex paHe Sunbelt Transport, Inc., 23 So.3d 1138 (Ala.Civ.App.2009) (accord).
In this case, the City did dispute the compensability of Pilson’s injuries because, in its answer, the City denied that Pilson had sustained the injuries set out in his complaint as a result of the motor-vehicle accident. However, in his renewed motion to compel medical treatment, Pilson asserted that the City no longer disputed compensability. In its response to the renewed motion to compel medical' treatment, the City did not object to that statement and, in fact, asserted to the trial court as follows:
“The sole issue in this case is whether [the City] should be liable to Pilson for worker’s compensation payments for treatments (surgery) to be performed by Dr. Ryan. [The City] would only be responsible for Dr. Ryan’s treatment of Pilson if Dr. Ryan was authorized as a treating physician (either expressly or impliedly) and if the treatments are reasonably necessary.”
The City then filed briefs with the trial court addressed to the evidence relating solely to the authorization issue. At the City’s request, the trial court then conducted a hearing, presumably based on the issues as framed by the City, ultimately finding that the City had impliedly authorized Dr. Ryan to treat Pilson based on the referral from Dr. Banach.
We conclude that the City, by defining the issues as set out above and by proceeding to the hearing based on those issues, waived any argument that the treatment by Dr. Ryan should not be covered because it was not proven to relate to a condition that was medically caused by the motor-vehicle accident. See McKinley v. McKinley, 277 Ala. 471, 172 So.2d 35 (1965) (recognizing that a party cannot complain on appeal that the trial court considered an issue that that party consented to submit to the trial court). The City could have presented that issue as a ground for denying the motion to compel medical treatment, but it elected to limit its objection solely to the alleged lack of authorization for the surgery by Dr. Ryan. The City did not assert to the trial court that the court could not rule on the motion because of the dispute as to compensability, and it did not ask for a hearing on compensability as a prelude to any ruling on the motion to compel medical treatment, which it would have had a right to do if it continued to dispute compensability. See Publix, supra. It is well settled that “ ‘[a] party may not predicate an argument for reversal on “invited error,” that is, “error into which he has led or lulled” ’ ” the pertinent adjudicative body. Wood v. State Pers. Bd., 705 So.2d 413, 422 (Ala.Civ.App.1997) (quoting Atkins v. Lee, 603 So.2d 937, 945 (Ala.1992), quoting in turn Dixie Highivay Express, Inc. v. Southern Ry., 286 Ala. 646, 651, 244 So.2d 591, 595 (1971)). Moreover, this court will not issue a writ of mandamus to compel a trial court to perform an act that the trial court was never requested to perform. See Wood v. City of Birmingham, 247 Ala. 15, 19, 22 So.2d 331, 334 (1945) (holding that, when there was no attempt in a motion to set aside that part of a decree that was final, mandamus would not issue *690 to review the action of the lower court in rendering its final decree, since mandamus will not issue to compel the court to do anything that it has not been asked to do). Finally, “[t]his Court cannot put a trial court in error for failing to consider evidence or accept arguments that, according to the record, were not presented to it.” Gotlieb v. Collect, 567 So.2d 1302, 1304 (Ala.1990).
We next address the question whether Dr. Banach had effectively referred Pilson to Dr. Ryan. That issue involves two separate, but interrelated, inquiries: (1) whether, as a matter of law, Dr. Banach possessed the authority to make such a referral in light of the fact that the City did not expressly authorize him to make the referral, and (2) assuming we answer the first question in the affirmative, whether, in fact, Dr. Banach did refer Pilson to Dr. Ryan. We conclude that Dr. Banach did have that authority and that the evidence sufficiently supports the trial court’s factual determination that Dr. Banach referred Pilson to Dr. Ryan.
In Overnite Transportation Co. v. McDuffie, 933 So.2d 1092 (Ala.Civ.App.2005), this court held that, pursuant to § 25-5-77, an employer has a right to select the initial treating physician for an employee who has been injured in a work-related accident. Once that physician has been selected by the employer, that physician has the implied authority to refer the employee to a specialist for reasonably necessary medical treatment, and the referred specialist thereby becomes an authorized physician. According to the holding in Ovemite, an employer may not limit the power of a selected physician to refer an employee for reasonably necessary medical treatment and it may not deny such a referral on the basis that the referral had not been previously expressly authorized by the employer. 933 So.2d at 1098 (“Nothing in ... the 1992 amendments to the Workers’ Compensation Act ... purports to give an employer direct authority to ‘preapprove’ or reject referrals made by an authorized treating physician.”). Thus, so long as the treatment to be obtained as a result of an authorized treating physician’s referral falls within the parameters of what is “reasonably necessary,” the employer may not refuse to authorize that treatment.[3] Id.; see also Ex parte Massey Chevrolet, Inc., 23 So.3d 33 (Ala.Civ.App.2009) (accord); City of Auburn v. Brown, 638 So.2d 1339, 1341 (Ala.Civ.App.1993) (“[A]s a general rule, the employer may not dictate to the employee that he may not have the medical treatment recommended by his authorized, treating physician.”); and 2 Terry A. Moore, Alabama Workers’ Compensation § 17:17 (1998) (“[An] employer may not limit the scope of the employee’s treatment by refusing to pay for reasonably necessary medical treatment recommended by the physician or agreeing to pay only for certain procedures.”).
The City relies on Marion Homes of Bear Creek, Alabama, Division of Tidwell *691 Industries, Inc. v. Dulaney, 441 So.2d 955 (Ala.Civ.App.1983), in support of its argument that an employer may expressly limit an authorized treating physician’s authority to refer an injured employee to another physician for reasonably necessary treatment. We disagree with the City’s premise and with its reliance on Dulaney. The issue in Dulaney was whether, by granting the injured employee permission to return to his family physician for treatment of a previous injury that the employer believed the employee had aggravated while at work, the employer had authorized the employee to obtain treatment for a wholly separate injury discovered by the family physician. Id. at 957. This court concluded that, because the employer had not specifically restricted the authorization it granted to the employee to return to his family physician for treatment, the employer’s authorization necessarily extended to whatever injury the employee had sustained on the date in question, which was subsequently discovered not to involve the area previously treated by the family physician. Id. In Dulaney, this court did not specifically address the issue now before this court, which has since been authoritatively addressed in Ovemite and the other cases cited above. Thus, we reject the City’s argument that Dr. Banach could not have referred Pilson to Dr. Ryan because the City had not granted Dr. Banach express authority to make such a referral.
As for the City’s argument that the evidence does not support the trial court’s finding that Dr. Banach referred Pilson to Dr. Ryan, we answer that contention by holding that our standard of review compels us to disagree. Pursuant to Ala. Code 1975, § 25-5-81(e), we review factual findings made in workers’ compensation cases solely to determine whether those findings are supported by substantial evidence, i.e., “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
“This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M & D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995).”
Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala.Civ.App.2007).
The evidence before the trial court, as summarized above, shows that, in his records, in a workers’ compensation form, and during a telephone call, Dr. Banach expressly conveyed to the City his intention that Pilson should be examined and treated surgically by Dr. Ryan. The verb “refer” is defined as “to send or direct for treatment, aid, information, or decision.” Merriam-Webster’s Collegiate Dictionary 1045 (11th ed.2003). The foregoing evidence alone shows that Dr. Banach referred Pilson to Dr. Ryan.
The City points out that, in his deposition, Dr. Banach testified that a referral, “in the official sense,” occurs when his office actually “goes through the necessary procedure to secure an appointment for a patient with another doctor,” whereas a “recommendation” would involve “telling a patient I think you should see Dr. X.” Dr. *692 Banach also testified that he had tried only to “s tart the process” of referral when he sent in the workers’ compensation form on April 2, 2008. Dr. Banach further testified that, when he indicated “refer to Dr. Ryan who is going to do the surgery” in his April 2, 2009, notes, he was merely noting that he intended to try to refer Pilson to Dr. Ryan through the City’s workers’ compensation system and that it was not a referral “in the strict sense”; rather, it was a statement of future intention. Dr. Banach stated that he never completed a “proper referral” to Dr. Ryan to perform the surgery through the City’s workers’ compensation administrator because the administrator had informed him that the administrator was setting up an appointment for Pilson with Dr. Davis. Dr. Banach stated that he could refer a patient only with the authorization of the City and that he had only requested the City to refer Pilson to Dr. Ryan.
The foregoing deposition excerpts merely illustrate that Dr. Banach understood that, as a matter of practice between his office and the City, he could refer injured employees to other doctors only with the express authorization of the City. Based on that understanding, any referral, in the “official” or “strict” sense, would not be completed until the City actually approved of his decision and expressly directed him to secure the appointment with the referred physician. However, as shown above, the law does not allow the City to withhold its authorization. Thus, once Dr. Banach informed the City that he wanted Pilson to see Dr. Ryan, the referral process was, legally speaking, complete. Ultimately, Dr. Banach testified correctly when he stated later in his deposition that, as Pilson’s physician, he should make the medical decisions for Pilson, that he had wanted Dr. Ryan to treat Pilson, and that he had, in fact, referred Pilson to Dr. Ryan on April 2, 2008, and again in April 2009. Therefore, we conclude that substantial evidence supports the trial court’s finding that Dr. Banach referred Pilson to Dr. Ryan.
We also reject the City’s claim that, because it did not specifically select Dr. Ryan as Pilson’s treating physician at the time Dr. Ryan first began treating Pilson, it had no obligation to authorize any subsequent referral of Pilson to Dr. Ryan. The City’s argument appears to be that, because Pilson began treatment with Dr. Ryan outside the Act, the City had no obligation to approve any subsequent referral of Pilson to Dr. Ryan, even when that referral was made by Pilson’s authorized treating physician. Stated differently, the City argues that Dr. Banach could not have referred Pilson, as contemplated by the Act, to a physician he was already seeing. We disagree.
As stated above, an employer is responsible for paying for the treatment choices made by the authorized treating physician so long as that choice falls within the parameters of what is “reasonably necessary” to treat the employee. See Overnite Transp. Co., 933 So.2d at 1096; see also § 25-5-77(a). Dr. Banach clearly stated that he agreed with Dr. Ingram that the referral to Dr. Ryan was reasonably necessary to further Pilson’s recovery from his work-related injuries. The referral therefore falls within the general rule of coverage. The City has cited no legal authority compelling us to hold that the mere fact that Pilson had previously received unauthorized treatment through Dr. Ryan forever barred Dr. Ryan from becoming an authorized physician, thereby carving carve out an exception to the general rule. In reaching our decision, we note that Dr. Banach testified that, when making his referral decision, he had taken into consideration the prior doctor-patient relation *693 ship between Pilson and Dr. Ryan, but he also testified that he would have referred Pilson to Dr. Ryan even if no such prior relationship had existed because he considered Dr. Ryan to be the best neurosurgeon in the area. We do not decide how we would treat a case in which an authorized physician merely deferred to the case planning of the injured employee or simply referred an employee to a prior physician for convenience or for purely financial considerations because those facts are not before us. We simply hold that, under the circumstances present in this case, the fact that Pilson had previously been treated by Dr. Ryan outside the Act, standing alone, does not render Dr. Banach’s referral ineffective.
We also reject the City’s argument that it had no notice that Pilson was being treated by Dr. Ryan and that it, therefore, cannot be held responsible for Dr. Ryan’s treatment. See 2 Terry A. Moore, Alabama Workers’ Compensation § 17:2 (1998) (“[A]n employer is not liable for treatment obtained by an employee without justification or prior notice to the employer.”). According to his deposition testimony, on April 2, 2008, Dr. Banach sent the City a form referring Pilson to Dr. Ryan, and he also sent a copy of his medical records on Pilson, which indicated that Pilson was being treated by Dr. Ryan. The City is therefore responsible for the medical treatment provided by Dr. Ryan following that date. We do agree with the City that Pilson began his treatment with Dr. Ryan without its express or implied authorization and that it bears no financial responsibility for any medical charges incurred by Pilson relating to his treatment with Dr. Ryan before April 2, 2008. However, we find no reason to issue a writ in this case because we do not construe the trial court’s order as requiring the City to pay for any charges incurred for Pilson’s treatment with Dr. Ryan before April 2, 2008. By its plain language, the order applies only to treatment received after Dr. Banach referred Pilson to Dr. Ryan.
For the foregoing reasons, we conclude that the City did not have a clear legal right to have the trial court deny the renewed motion to compel medical treatment filed by Pilson. Having also concluded that the trial court did not refuse any demand for a hearing on compensability because no such demand was made, we deny the City’s petition for a writ of mandamus in full.
PETITION DENIED.
THOMPSON, P.J., and BRYAN, J., concur.
PITTMAN and THOMAS, JJ., concur in the result, without writings.

. Pilson paid for all unauthorized medical treatment referred to herein through his health insurance.

. Pilson represents that the trial court denied his May 2009 motion without a hearing.

. Before the trial court (except for a cursory one-line reference in its response to the renewed motion to compel medical treatment), and in its petition and initial brief filed with this court, the City failed to challenge the reasonable necessity of Dr. Banach's referral. The City asserts a challenge to the reasonable necessity of any treatment plan for Pilson's injuries for the first time in its reply brief. "We note ‘the well-established principle of appellate review that we will not consider an issue not raised in an appellant’s initial brief, but raised only in its reply brief.’ ” Kyser v. Harrison, 908 So.2d 914, 917 (Ala.2005) (quoting Brown v. St. Vincent's Hosp., 899 So.2d 227, 234 (Ala.2004)). Thus, we do not consider the City’s belatedly asserted argument regarding the reasonable necessity of the referral to Dr. Ryan.