PITTMAN, Judge.
Advantage Resourcing, Inc. (“the employer”), a corporate entity formerly known as “Willstaff Worldwide Temporary Services, Inc.,”[1] seeks review of an order of the Mobile Circuit Court, entered on March 22, 2011, that awarded medical and temporary-total-disability benefits under the Alabama Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq. (“the Act”), to Hennon Hollinghead (“the employee”) and directed the employer to permit the employee to undergo a surgical procedure. The trial court awarded that relief based upon its determination that a slip-and-fall injury suffered by the employee on January 21, 2010, which injury the trial court deemed to be compensable under the Act because it was sustained while the employee was walking from his parked motor vehicle in order to enter his place of work that day before working hours, had contributed to the employee’s development of pain symptoms in his neck in the area of his cervical spine. The employee had originally filed a single-count complaint in the trial court seeking benefits from the employer under the Act, but the employee was later permitted to amend his complaint to assert a separate third-party tort claim against D & E Construction, L.L.C., the entity that, the employee alleged, had negligently caused debris to remain on the walkway that the employee was using when he fell; that claim remains pending in the trial court, along with the issue of the employee’s entitlement, if any, to further benefits from the employer under the Act.
The employer, in its brief to this court, asserts that appeal and not mandamus is the appropriate mechanism for *172 seeking review of the trial court’s order, noting our holding in Belcher-Robinson Foundry, LLC v. Narr, 42 So.3d 774, 775-76 (Ala.Civ.App.2010), that “when a trial court ... awards medical benefits and temporary-total-disability benefits in addition to determining compensability, the trial court has rendered a final judgment that is susceptible to appellate review.” However, Narr involved only a single claim under the Act against a single defendant, not separate claims against separate defendants as are present in this case. Because the trial court’s order did not adjudicate all claims as to all parties, see Rule 54(b), Ala. R. Civ. P., the March 22, 2011, order is not a final judgment that would support an appeal. See Edmonds Indus. Coatings, Inc. v. Lolley, 863 So.2d 1121, 1122 (Ala.Civ.App.2003). Nevertheless, because the order presented for review in this case closely parallels, in its legal effect upon the parties’ rights and responsibilities, the order we reviewed in Ex parte Cowabunga, Inc., 67 So.3d 136, 138-39 (Ala.Civ.App.2011), in which we treated an appeal as a petition for a writ of mandamus, we will consider the employer’s appeal in this case as seeking a writ of mandamus directed to the trial court to set aside its order of March 22, 2011.
“The standard of appellate review in workers’ compensation cases is governed by § 25-5-81(e), Ala.Code 1975, which provides that, ‘[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’ ‘Substantial evidence’ is ‘“evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)).
“When evidence is presented ore ten-us, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented. Blackman v. Gray Rider Truck Lines, Inc., 716 So.2d 698, 700 (Ala.Civ.App.1998). The role of the appellate court is not to reweigh the evidence but to affirm the judgment of the trial court if its findings are reasonably supported by the evidence and the correct legal conclusions have been drawn therefrom. Ex parte Trinity Indus., 680 So.2d at 268-69; Fryfogle v. Springhill Mem’l Hosp., Inc., 742 So.2d 1255 (Ala.Civ.App.1998), aff'd, 742 So.2d 1258 (Ala.1999). The ‘appellate court must view the facts in the light most favorable to the findings of the trial court.’ Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003).”
Ex parte Hayes, 70 So.3d 1211, 1215 (Ala.2011). Although a petition for the writ of mandamus and not an appeal is the proper mechanism by which the employer may obtain review of the March 22, 2011, order, the standard of review set forth in § 25-5-81(e) nonetheless applies. See Ex parte City of Prattville, 56 So.3d 684, 691 (Ala.Civ.App.2010) (applying substantial-evidence standard of review to factual findings made in nonfinal order entered in workers’ compensation action compelling an employer to provide medical treatment).
“[F]or an injury to be compensa-ble under the Workers’ Compensation Act, the employee must establish both legal and medical causation.” Ex parte Moncrief 627 So.2d 385, 388 (Ala.1993). The employer in this proceeding challenges the trial court’s determinations as to both causation prongs. “Whether the employment *173 caused an injury is a question of fact to be resolved by the trial court,” Francis Powell Enters., Inc. v. Andrews, 21 So.3d 726, 732 (Ala.Civ.App.2009), a principle of law that directly implicates the deferential standard of review set forth by the supreme court in Hayes.
The employee was 72 years old on the date of his injury. Although the employee’s work experience included labor as a blacksmith, as a welder, and, in his youth, as a rodeo rider, the employee had more recently worked for Ronnie Davis Associates (“RDA”), a construction contractor for the Alabama Power Company, as a dump-truck driver; however, upon his having reached the age of 70, the employee was told that he was “too old to be carried on” RDA’s payroll and insurance and that he would have to obtain employment through a staffing company such as the employer in order to continue doing the work he had previously been doing.
On the date of the employee’s injury, the employee reported to his customary place of work — a “shop” located on the premises of the Thyssen-Krupp industrial plant — at approximately 5:80 a.m., which was his normal arrival time, and he entered the shop by using a walkway extending from a nearby parking lot to the shop (a walkway that, the employee testified, “everybody” at his workplace used). However, because the employee had left his portable two-way radio unit in his motor vehicle, he returned to the parking lot to retrieve it. As he again used the walkway heading toward the shop, the employee testified, he perceived “something happening] behind” him; turned to look behind him; resumed moving forward; and slipped on a piece of polyvinyl-chloride (“FVC”) piping that rolled underneath his foot, causing him to fall on his back and right side and to immediately experience debilitating pain. Unable to pick himself up from the ground after the injury, the employee immediately called for help from coworkers on the two-way radio, and he was subsequently transported to a local hospital for treatment and examination.
After the employee left the hospital, the employer’s workers’ compensation insurance carrier directed the employee to be examined by an industrial-medicine practitioner, who, after being unable to alleviate the employee’s continued pain symptoms, referred the employee to Dr. William C. Patton, an orthopedic specialist. After obtaining X-ray images and performing a physical examination, Dr. Patton initially believed that the employee’s neck pain stemmed from arthritis, but he directed the employee to undergo a magnetic-resonance-imaging (“MRI”) procedure to determine the presence of a herniated cervical vertebral disk; the MRI revealed foraminal stenosis, i.e., degenerative narrowing of nerve conduits, and an accumulation of fluid in the employee’s neck. Dr. Patton referred the employee to Dr. Kevin Donahoe, a orthopedic surgeon, for further assessment and treatment; during his examination, Dr. Donahoe observed that the employee had “Hoffman reflexes,” i.e., spasticity and fascieulation in forearm muscles that potentially indicate pressure in the region of the spinal cord near the fifth and sixth cervical vertebrae, and that the employee could not perform a heel-to-toe walk, a condition that is also potentially associated with spinal-cord pressure. A subsequent nerve-conduction study revealed the employee to have right pronator teres and triceps abnormalities that were attributable to problems with the nerve roots in the area of the employee’s sixth and seventh cervical vertebrae. Dr. Do-nahoe recommended that the employee undergo a surgical procedure (a corpecto-my) to remove impinging vertebral disks in the cervical spine in order to alleviate *174 pressure upon the employee’s spinal cord and affected nerve roots, thereby decreasing his continued pain. Although the employee desired to undergo the recommended surgery, the employer declined to authorize it.
The employer contends that the employee’s injury did not arise out of and in the course of his employment and that the injury is thus not compensable under the Act as a matter of law. As the employer correctly notes in its brief, the supreme court, in Ex parte Patton, 77 So.3d 591 (Ala.2011), recently reconfirmed the principle — one which had been placed in some doubt by dicta in Ex parte Byrom, 895 So.2d 942 (Ala.2004) — that a claimant under the Act, in order to recover, must “ ‘establish a definite causal connection between the work and the injury5 ” such that “ ‘the rational mind [is] able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency.’ ” 77 So.3d at 594-95 (quoting Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 202 (Ala.Civ.App.1981), and Wooten v. Roden, 260 Ala. 606, 611, 71 So.2d 802, 806 (1954)). Ex parte Patton leaves no room for dispute that the traditional “causal-connection” test of legal causation is in full force and effect in this state.
Unlike the injured employee at issue in Ex parte Patton, however, the employee in this case did not simply allege and prove that he had suffered a fall on an employer’s premises. Rather, the evidence in this case, viewed in a light most favorable to the employee, indicates that the employee, at the time that he fell on the PVC pipe, was in the process of returning to the shop, ie., the place where the employee reported at the start of each of his workdays, after having gone to his automobile to retrieve a two-way radio, which no party disputes was a tool of the employee’s work. The walkway that the employee used was used by other RDA workers at the time that the employee suffered his fall and subsequent injury, notwithstanding the fact that that path was marked as being impassable after the employee’s fall. That the fall in this case stemmed from a PVC pipe that had been allowed to remain in close proximity to a walkway leading to a shop at which the employee and his coworkers were to report for work each day and that the employee’s fall occurred at a time and place at which he would reasonably be expected to have reported in furtherance of the employment relationship both support the trial court’s determination that the employee’s fall indeed arose out of and in the course of his employment. See Ex parte Strickland, 553 So.2d 593, 595 (Ala.1989) (holding that employee’s injury, which had occurred after he had jumped from a fence enclosing his employer’s company parking lot after having retrieved personal items and a work tool belt from the lot, was “ ‘naturally related’ to his employment” for purposes of legal causation under the Act; employee was covered for a reasonable time, space, and opportunity before and after he was at or near his place of employment); see also Benoit Coal Mining Co. v. Moore, 215 Ala. 220, 222-23, 109 So. 878, 880 (1926) (“‘the movement of the employee in entering, at the appropriate time, the employer’s premises to discharge his function [and] his preparation to begin ... his actual service’ ” are deemed “ ‘naturally related and incidental acts in the course of the employment’” (quoting Ex parte Louisville & Nashville R.R., 208 Ala. 216, 219, 94 So. 289, 292 (1922))).
The employer also contests the trial court’s determination concerning medical causation. In Associated Grocers of the South, Inc. v. Goodwin, 965 So.2d 1102 (Ala.Civ.App.2007), this court re *175 stated several pertinent principles of law governing medical causation under the Act:
“To establish medical causation, the claimant must show that the accident was, in fact, a contributing cause of the employee’s [injury]. It is not necessary that the employment-related injury be the sole cause, or the dominant cause, of the [injury], so long as it was a contributing cause. If the employee suffers from a latent preexisting condition that inevitably will produce injury or death, but the employment acts on the preexisting condition to hasten the appearance of symptoms or accelerate its injurious consequences, the employment will be considered the medical cause of the resulting injury.”
965 So.2d at 1110 (citations omitted). In this regard, lay testimony, such as that of the employee here, is to be considered along with medical testimony as amounting to proof of causation because “‘[i]t is in the overall -substance and effect of the whole of the evidence, when viewed in the full context of all the lay and expert evidence, and not in the witness’s use of any magical words or phrases, that the [causation] test finds its application.’ ” Ex parte McInish, 47 So.3d 767, 779 (Ala.2008) (quoting Ex parte Price, 555 So.2d 1060, 1068 (Ala.1989)).
At trial, the employee testified that he had experienced pain in his right knee, right hip, right shoulder, lower back, and neck after having fallen on January 21, 2010, and that his continued, constant pain symptoms in his neck and back had made him unable to resume working afterwards. With respect to the issue of preexisting neck conditions, the employee testified that he had never previously experienced “neck problems” and that he had never seen a physician for a neck problem before the accident. Although the employee did admit on cross-examination that he had reported to medical personnel after a November 2002 motor-vehicle collision that he was experiencing neck pain, the employer did not elicit evidence tending to indicate that the employee had not fully recovered from any injuries suffered in that collision.
The transcripts of the depositions of two of the employee’s treating physicians (Dr. Patton and Dr. Donahoe) and of a physician retained by the employer to examine the employee (Dr. Bendt Petersen) were admitted into evidence. When counsel for the employer asked Dr. Donahoe at his deposition whether he could “form some sort of opinion to a certain degree of medical certainty ... that [the employee’s] current complaints and symptoms are, in fact, the result of’ the January 21, 2010, accident, Dr. Donahoe replied that “the mechanism for [the employee’s] injury that he described to me,” i.e., the workplace fall, was “a mechanism that would make [one’s] neck worse with a pre-existing bad neck ... to a degree of medical certainty”; on cross-examination, Dr. Donahoe flatly opined, “yeah, I think the fall made [the employee’s neck] worse” and further opined, over the employer’s objection, that the fall “at least contributed to the necessity of the surgery” he had recommended for the employee. Dr. Patton testified that a fall such as that suffered by the employee would have “a more substantial impact on a seventy-two year old than a [man of] thirty or forty,” although he deferred to Dr. Donahoe’s opinion regarding whether the employee’s neck problems after the fall were or were not caused or contributed to by the fall. Finally, although Dr. Petersen testified at his deposition on direct examination that it was his opinion that the employee had not suffered a new injury as a result of the fall, he admitted in response to a question posed by counsel for the employee during cross-examination, a question that hypothesized *176 a number of facts from the employee’s prior work history, that the fall “at least contributed to” the employee’s post-fall medical problems.
Thus, we conclude that, although the employee had indeed suffered degenerative stenosis in his neck before the injury, the trial court could properly conclude from substantial evidence, as it did, that that condition had remained latent until the employee’s workplace injury acted to cause the debilitating neck pain necessitating the surgical intervention prescribed by Dr. Donahoe. The trial court, rather than this court, was entitled under the Act to weigh the testimony given by the employee and the treating and examining physicians against the medical records submitted by the employer by which the employer had sought to impeach the employee’s credibility as to the onset of his neck symptoms. Unlike in Ex parte Southern Energy Homes, Inc., 873 So.2d 1116 (Ala.2003), the totality of the testimony of lay and medical witnesses in this case, viewed in a light most favorable to the employee, does not rise simply to the level of a mere “possibility” of medical causation.
For the foregoing reasons, the trial court’s March 22, 2011, order is not due to be disturbed, and we decline to issue a writ of mandamus in this case.
PETITION DENIED.
THOMPSON, P.J., concurs.
BRYAN, THOMAS, and MOORE, JJ., concur in the result, without writings.

. The defendant business entity named in the original complaint in this case was “Willstaff, Inc.,” a name that was claimed by defense counsel to be a misidentiftcation.