THOMPSON, Presiding -Judge.
Fairhope Health & Rehab, LLC (“FHR”), purports to appeal from an order .of the Baldwin Circuit Court (“the trial court”) finding that Lula Durgin, its employee, had sustained- an injury to her right knee for which she was entitled to receive workers’ compensation benefits. In its order, the trial court directed FHR to pay for, among other things, the medical treatment required to replace Durgin’s right knee.
The record indicates the following, Durgin worked as the activities director of a nursing home operated by FHR for eight years. Taking residents of the nursing home on outings so they could participate in various activities outside the FHR facility was among her duties as activities director. On Friday, February 10, 2012, Durgin said, she was preparing for an outing to take the residents shopping and had loaded the residents’ wheelchairs into the FHR van. As she attempted to climb into the driver’s seat of the van, Durgin said, she twisted her right knee and imme.-diately felt pain. Durgin testified that she had to call to a coworker to help her maneuver out from under the steering wheel, where she had become stuck. Dur-gin said that her right knee hurt, but she continued with the outing. She did not seek medical attention that day.
When she returned to work on Monday, Durgin said, her knee was swelling “pretty good,” so she made a visit to the company doctor. The company doctor treated Dur-gin and ultimately referred her to Dr. Cesar M. Roca, Jr., an orthopedist. Dr. Roca first saw Durgin on April 2, 2012. Dr. Roca testified by deposition that he had diagnosed Durgin with a torn medial. meniscus, or torn cartilage, in her right knee. In fact, Dr. Roca said, Durgin’s meniscus was “shredded.” He also found that she had preexisting arthritis in her right knee. The evidence is undisputed, that Durgin’s right knee had preexisting degenerative damage before the February 2012 incident. Dr. Roca looked at an MRI of Durgin’s right knee taken in late 2007, and, he said, Durgin had a “terrible-looking knee” then and a “terrible-looking knee in 2012.”[1] Dr. Roca said that, during her initial visit with him, Durgin told him that she had had some previous discomfort in her right knee, but not to the extent she had after the February 10, 2012, incident.
Dr. Roca explained that it was difficult to determine how much of Durgin’s meniscal tearing was preexisting and how much had been caused by the twisting injury. He said:
“I can guarantee you had a great deal of some shredding pre-existing and some of the few fibers that were — that were not symptomatic, that finished damaging when she had the twisting injury, so — so in reality, the — the condition of her knee was a combination of the preexisting degenerative change plus some acute exacerbation by the twisting injury.”
When asked if he could state within a reasonable degree of medical certainty whether the twisting injury that occurred on February 10, 2012, aggravated, accelerated, or incited Durgin’s knee condition to make it become symptomatic, Dr. Roca responded “yes.”
On May 25, 2012, Dr. Roca operated on Durgin’s right knee to remove the meniscal tear. He concluded that, by June 29, 2012, six weeks after the surgery, Durgin had reached maximum medical improvement (“MMI”) for the work-related injury, i.e., the injury she received on February 10, 2012. Dr. Roca explained that, as of *625 late June 2012, Durgin was still feeling discomfort in her right knee because of the arthritis she had in that knee, but, he said, she had reached a plateau for the twisting injury. Explicitly excluding the preexisting arthritis, Dr. Roca said, he assigned Durgin an impairment rating of 4% to the whole person and 10% to the “lower extremity” as a result of the February 10, 2012, work-related injury. He also said that Durgin’s impairment rating would be higher if he considered the arthritis along with the twisting injury. He released her to return to work with no restrictions.
Nonetheless, Durgin continued to have pain in her right knee. Dr. Roca said that he saw her again in September 2012, when Durgin complained of right-knee pain. He said that Durgin told him that her right knee would “give out,” causing her to fall. Dr. Roca testified that the falls Durgin experienced after he operated on her medial meniscus “ha[d] nothing to do with her work related injury.” He referred Durgin to his colleague, Dr. Roger Setzler, who is an orthopedic surgeon. Durgin’s medical records indicate that she saw Dr. Setzler on October 1, 2012. At that time, Dr. Setzler diagnosed Durgin with “severe degenerative joint disease” in her right knee. Dr. Setzler recommended that Durgin have her right knee replaced. Dr. Roca said that a knee replacement would not be related “in any way to the [February 10, 2012,] accident.” Instead, he said, the knee replacement would be necessitated because of Durgin’s chronic arthritic condition, that is, the preexisting degeneration of her right knee. Dr. Roca said that the twisting. injury caused “an acute exacerbation” of Durgin’s right-knee condition;' however, he said, as a result of the surgery he performed on that knee, “we got her back to better than she was before the [work-related] accident.”
On August 20, 2014, after holding an ore tenus hearing and reviewing the documentary'evidence the parties’ submitted, the trial court entered an order in which it found that Durgin had sustained a work-related injury to her right knee. It ordered FHR to provide medical care and treatment to Durgin for her right-knee injury, “including, but not limited to, the prescribed right kne¿ replacement.” The trial court also stated that it would set the matter for a final hearing to determine the disability benefits to which Durgin is entitled, “whether temporary total or permanent, after [Durgin] has reached maximum medical improvement” from her knee-replacement surgery. On September 25, 2014, FHR filed its notice of appeal in this case.
As a preliminary matter, Durgin asserts that, because the trial court has not yet determined the type or amount of disability benefits to which she is entitled, the order is not final for purposes of appeal.
“ ‘ “It is a well established rule that, with limited exceptions, an appeal will lie only from a final judgment which determines the issues before the court and ascertains and declares the rights of the parties involved.”’ Owens v. Owens, 739 So.2d 511, 513 (Ala.Civ.App.1999), quoting Taylor v. Taylor, 398 So.2d 267, 269 (Ala.1981). This court has stated:
“ ‘A final judgment is one that completely adjudicates all matters in controversy between all the parties.
[[Image here]]
“Eubanks v. McCollum, 828 So.2d 935, 937 (Ala.Civ.App.2002) (citations omitted).”
Adams v. NaphCare, Inc., 869 So.2d 1179, 1181 (Ala.Civ.App.2003). Because the order in this case does not determine the type or amount, if any, of disability benefits Durgin may recover in this case, the *626 August 20, 2014, order does not completely adjudicate Durgin’s claims against FHR. Therefore, our initial inquiry must be to determine whether the order from which FHR “appeals” is a final judgment capable of supporting an appeal.
“[A] mere compensability determination that awards no relief, other than directing an employer to allow medical treatment, is not a ‘final judgment’ that is subject to appellate review, but is instead renewable by an appellate court only by a petition for a writ of mandamus. See SouthernCare, Inc. v. Cowart, 48 So.3d 632 (Ala.Civ.App.2009). However, as Fluor Enterprises[, Inc. v. Lawshe, 16 So.3d 96, 99 (Ala.Civ.App.2009),] indicates, the rule is now emerging that when a trial court goes further, and awards medical benefits and temporary-total-disability benefits in addition to determining compensability, the trial court has rendered a final judgment that is susceptible to appellate review. See Fluor Enterprises, 16 So.3d at 99; BE & K, Inc. v. Weaver, 743 So.2d 476, 480 (Ala.Civ.App.1999); and Ex parte DCH Reg’l Med. Ctr., 571 So.2d 1162, 1164-65 (Ala.Civ.App.1990).”
Belcher-Robinson Foundry, LLC v. Narr, 42 So.3d 774, 775-76 (Ala.Civ.App.2010).
In this case, the trial court ordered FHR to pay for the “medical care and treatment of [Durgin’s] right knee injury, including, but not limited to, the prescribed right knee replacement.” That order is an implicit finding of compensability. However, the trial court reserved ruling on the issue of whether Durgin is entitled to receive temporary or permanent disability benefits and, if so, the amount of those benefits. Thus, FHR seeks appellate review from a nonfinal order. Because the trial court’s compensability determination is reviewable by a petition for a writ of mandamus, we elect to treat FHR’s “appeal” as a petition for a writ of mandamus. See Ex parte Advantage Resourcing, Inc., 109 So.3d 170,172 (Ala.Civ.App.2012).
Although a petition for the writ of mandamus and not an appeal is the proper mechanism by which FHR may obtain review of the August 20, 2014, order, the standard of review set forth in § 25-5-81(e), Ala.Code 1975, nonetheless applies. Ex parte Advantage Resourcing, Inc., 109 So.3d at 172. See also Ex parte City of Prattville, 56 So.3d 684, 691 (Ala.Civ.App.2010) (applying substantial-evidence standard of review to factual findings made in nonfinal order entered in workers’ compensation action compelling an employer to provide medical treatment).
“Section 25-5-81(e), Ala.Code 1975, provides the standard of review in workers’ compensation cases:
“ ‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).”
White Tiger Graphics, Inc. v. Clemons, 88 So.3d 908, 910 (Ala.Civ.App.2012). In reviewing findings of fact,
“[o]ur review is restricted to a determination of whether the trial court’s factual findings are supported by substan *627 tial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M & D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998).”
Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala.Civ.App.2007).
“ £[F]or an injury to be compensable under the Workers’ Compensation Act, the employee must establish both legal and medical causation.’ Ex parte Moncrief, 627 So.2d 385, 388 (Ala.1993). 'Once legal causation has been established, i.e., that an accident arose out of, and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.’ Hammons v. Roses Stores, Inc., 547 So.2d 883, 885 (Ala.Civ.App.1989).”
Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121 (Ala.2003).
FHR argues that Durgin failed to prove both legal and medical causation. FHR contends that Durgin failed to prove that an accident, that is, “an unexpected or unforseen event, happening suddenly and violently,” occurred in this case. § 25-5-1(7), Ala.Code 1975. The Workers’ Compensation Act (“the Act”), § 25-5-1 et seq., Ala.Code 1975, provides that the word “accident,”
“as used in the phrases ‘personal injuries due to accident’ or ‘injuries or death caused by accident’ shall be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body or damage to an artificial member of the body by accidental means.”
§ 25-5-1(7).
The Act also defines “[ijnjuries by an accident arising out of and in the course of the employment” as follows:
“Without otherwise affecting either the meaning or interpretation of the clause, the clause does not cover workers except while engaged in or about the premises where their services are being performed or where their service requires their presence as a part of service at the time of the accident and during the hours of service as workers.”
§ 25-5-1(8).
In its appellate brief, FHR states that Durgin’s testimony “establishes” that her right knee twisted as she was climbing into the driver’s seat of the van FHR used to transport residents on their outings. That occurrence is the very definition of an accident arising out of and in the course of employment. FHR seems to argue that because Durgin’s knee twisted before she became “stuck” between the driver’s seat and the steering wheel, no accident occurred. That assertion is without a factual or legal foundation. We conclude that substantial evidence supports a finding that Durgin met her burden of proving legal causation, that is, of proving that an accident arose out of and in the course of her employment as activities director for FHR.
FHR is on firmer ground, however, in arguing that the trial court erred in finding that the right-knee replacement Dr. Setzler recommended as treatment for Durgin is related to the February 10, 2012, *628 accident.[2] The trial court found that, after the surgery Dr. Roca performed on Dur-gin’s right knee, Durgin “continued to suffer with the stability of the knee, affecting her ability to work.” The trial court also explicitly found that Durgin had not reached MMI. After the February 10, 2012, injury to her -right knee, the trial court stated, Durgin “is now in need of a right knee replacement prescribed by her treating physicians to recover from the injury sustained in the line and scope of her employment with [FHR].” However, FHR argues, Durgin failed to prove that her need for a right-knee replacement was caused by the February 2012 accident. In other words, FHR contends that Durgin failed to prove medical causation as it relates to the need for her to have her right knee replaced.
This court is cognizant of the well settled proposition that an employee who suffers from a preexisting condition is not precluded from recovering workers’ compensation benefits merely because his or her condition existed before the work-related incident giving rise to a workers’ compensation claim. SouthernCare, Inc. v. Cowart, 146 So.3d 1051, 1068 (Ala.Civ.App.2013). However, it is equally true that “an employer is not the absolute insurer of an employee’s health and should bear only the costs of compensating employees for accidents that arise out of and in the course of their employment.” Ex parte Trinity Indus., Inc., 680 So.2d 262, 265 (Ala.1996) (footnote omitted).
' This court has held numerous times that if a work-related accident temporarily aggravates a preexisting- condition, not contributing at all- to the preexisting condition after a period, the employer is liable for compensation under the Act only for the temporary disabling effects caused by the accident. See, e.g., Alamo v. PCH Hotels & Resorts, Inc., 987 So.2d 598 (Ala.Civ. App.2007) (affirming judgment denying permanent-disability benefits to employee based on evidence indicating that employee had only temporarily aggravated preexisting back problem while working for employer and that any continuing symptoms resulted solely from preexisting condition); Howe v. Choctaw Emergency Mgmt. Servs., 725 So.2d 978, 979 (Ala.Civ.App.1998) (holding that finding that employee had not sustained permanent partial disability as a result of a back injury was supported by substantial evidence; doctor testified that back injury caused lumbar strain from which employee recovered one year later and that remaining back pain was attributable to a preexisting condition); and Cobb v. Coyne Cylinder Co., 719 So.2d 219, 222 (Ala.Civ.App.1998) (affirming judgment denying permanent-disability benefits to employee based on evidence indicating that employee had only temporarily injured his shoulder and that any permanent problems resulted from a preexisting condition).
The facts in .this case are analogous to those in Alamo v. PCH Hotels & Resorts, Inc., supra. In that case, Alamo had preexisting degenerative spinal and disk problems that were temporarily aggravated by two accidents during the course of his employment with PCH Hotels. The *629 ■trial court found that *PCH Hotels was liable for certain workers’ compensation benefits based on the aggravation of Alamo’s back condition. However, the- trial court also found that the “ ‘temporary aggravations [had] fully resolved,’” adding that Alamo had failed to meet his burden of proving that the accidents caused or contributed to any permanent injury. 987 So.2d at 601. Therefore, the trial court did not award Alamo benefits for a permanent disability, and this court affirmed that determination. Id.
After an employee recovers from a temporary aggravation, an employer bears no liability under the Act for any lingering or permanent injury or disability caused solely by a preexisting condition. See Sexton v. Pendley, 474 So.2d 1148, 1150 (Ala.Civ.App.1985) (affirming award of temporary-total-disability benefits, but denying permanent-disability benefits, based on finding that work-related accident caused temporary injury but that permanent back problems related solely to employee’s obesity); and DeHart v. Ideal Basic Indus., Inc., 527 So.2d 136, 138-39 (Ala.Civ.App.1988) (trial court did not err in awarding only 15% permanent-partial-disability benefits based on expert medical evidence indicating that preexisting degenerative disk disease, not work-related back strain, caused the majority of employee’s permanent disability).
In this case, there is substantial evidence indicating that Durgin has continuing pain in her right knee and that, because of her knee pain, her physical abilities are limited. The question before us, however, is whether substantial evidence supports the trial court’s finding that the injury Durgin received in the February- 2012 accident is the cause of her current knee pain and also gave rise to Dr. Setzler’s recommendation that she receive a' right-knee replacement.
The undisputed evidence indicates that in late 2007, four years before the February 2012 injury to, Durgin’s right-knee, Durgin had béen diagnosed with arthritis, in her right knee and that the degenerative condition of her right knee at that time left her with a “terrible-looking” knee. Dr. Roca, the only physician whose testimony was before the trial court in this case, said that the twisting injury Durgin suffered in February-2012 caused “an acute exacerbation” of Durgin’s right-knee condition; however, he said, as a result of the surgery he performed on that knee in May 2012, “we got her back to better than she was before the [work-related] accident.” He determined that, by the end of June 2012, Durgin had reached MMI as it related to-her work-related injury, but not as to her arthritis and degenerative condition. In other words, Dr. Roca’s testimony indicated that the twisting injury temporarily exacerbated Durgin’s preexisting knee problems, but that the pain she was experiencing as a result of that injury had resolved by the end of June 2012, and that the residual pain she was feeling was the result of her arthritis and the degenerative condition of her knee.
Dr. Roca also gave unequivocal testimony that a right-knee replacement would not be related “in any way to the [February 10, 2012,] accident.” Instead, he said, the knee replacement would be necessitated because of Durgin’s chronic arthritic condition, that is, the preexisting degeneration of her right knee. Durgin’s medical records indicate that Dr. Setzler diagnosed her with “severe degenerative joint disease” in her right knee. - Dr. Roca further testified that the falls Durgin experienced after her May 2012 surgery on her medial meniscus “ha[d] nothing to’ do with her work related injury.” Durgin presented *630 no evidence to dispute Dr. Roca’s testimony regarding the cause of her knee pain and the reason that necessitated her right-knee replacement.
We recognize that a trial court is not bound by expeit opinions in workers’ compensation cases, even if those opinions are uncontroverted. Gore v. Lafarge North America, Inc., 159 So.3d 743, 751 (Ala.Civ.App.2013). However, as mentioned, to establish medical causation, the employee must show that the accident arising out of and in the course of the employment was, in fact, a contributing cause of the claimed injury. Ex parte Trinity Indus., Inc., 680 So.2d at 266.
Based on the record before us, we conclude that there is insufficient evidence from which one could reasonably conclude that Durgin’s work-related injury continued to contribute to the preexisting degenerative condition of her right knee and her need for a knee replacement. There is no basis for a determination that the recommended knee surgery is attributable to anything other than Durgin’s preexisting condition. Accordingly, we conclude that Durgin failed to meet her burden of proving medical causation as it relates to her need for a right-knee replacement and that the trial court’s determination that FHR is responsible for Durgin’s knee replacement is contrary to the evidence.
For the reasons set forth above, FHR’s petition for a writ of mandamus is due to be granted to the extent it requests relief from the trial court’s order directing FHR to pay for Durgin’s right-knee replacement. However, we deny the petition insofar as it seeks to challenge the trial court’s finding that Durgin sustained a compensable injury to her right knee when she was involved in a work-related accident on February 10, 2012. We reiterate that the trial court has not yet determined the extent of disability, if any, Durgin suffered as a result of that injury. Therefore, we direct the trial court to set aside that portion of its August 20, 2014, order directing FHR to pay for “the prescribed right knee replacement” and to enter an order consistent with this opinion.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
PITTMAN and DONALDSON, JJ., concur.
MOORE, J., dissents, with writing, which THOMAS, J., joins.

. Durgin had her left knee replaced in 2008.

. In the August 20, 2014, order, the trial court directed FHR to pay for "medical care and treatment of [Durgin’s] right knee injury, including, but not limited to, the prescribed right knee replacement.” In its brief on appeal, FHR does not contend that the trial court erred in ordering it to pay for the surgery Dr. Roca performed; it only challenges its responsibility for the knee-replacement surgery and treatment. Therefore, any argument that the trial court erred in ordering FHR to pay for the treatment administered by Dr. Roca is waived. Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994) ("Issues not argued in the appellant's brief are waived.").